NO. 12-02-00275-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




THE STATE OF TEXAS,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY CRIMINAL COURT NO. 2 OF


ERIC ROLDEN SALINAS,

APPELLEE
§
 TARRANT COUNTY, TEXAS






MEMORANDUM OPINION


 The State of Texas appeals from the trial court's order granting Appellee Eric Rolden
Salinas's motion to suppress evidence. In eight issues, the State contends the police officer's contact
with Salinas, the arrest, and the search were all proper and, therefore, the motion to suppress should
have been denied. We affirm the trial court's order.


Background

 On November 8, 2000, Salinas was charged by information with possession of marijuana in
the amount of two ounces or less. Between December 14, 2000 and June 27, 2001, Salinas filed six
motions for continuance. On May 29, 2002 he filed a motion to suppress the marijuana seized by
the arresting officer, Detective G.C. Mahaffey. In the motion, Salinas alleged that the stop was based
only on an uncorroborated tip from an anonymous informant. Asserting that his constitutional rights
were violated, he argued that the stop, search, and arrest were without probable cause. Therefore,
he argued, the search was illegal and the marijuana must be suppressed. A hearing was held on the
motion on August 26, 2002.

 Detective Mahaffey, of the Fort Worth police department, testified at the hearing on Salinas's
motion to suppress. On October 5, 2000, he was a neighborhood patrol officer and as such he acted
as a liaison between the police department and the community for a defined geographic area that
included the Clayton Estates Mobile Home Park. On that day, he received either a phone call or a
radio transmittal from Citizens on Patrol member Margaret Bloom. Ms. Bloom, who lives in 
Clayton Estates, reported that a group of young adult males was loitering in front of the mobile home
park's office. She said they had torn down a "No Loitering" sign. Ms. Bloom gave a clothing
description of the young men; however, the officer was not able to remember it at the time of the
hearing. Detective Mahaffey testified that he considered Ms. Bloom to be a reliable informant.

 Detective Mahaffey arrived at the mobile home park less than five minutes after receiving
the information from Ms. Bloom. He patrolled the park and saw only one group of males. They
were about one hundred yards from the office area, walking away from it. They matched the
clothing description given by Ms. Bloom. He stopped his marked patrol unit and made contact with
the group.

 He advised them that a sign had been torn off the office building and asked them if they had
any knowledge about that incident. They told him they had been near the office but had not seen
anyone tear off the sign. The officer smelled freshly burnt marijuana while near the group. 
Detective Mahaffey testified that he had an articulable suspicion based on the information from Ms.
Bloom and therefore gathered their personal information and identification. He also explained that
in the absence of the information from Ms. Bloom, he could stop people and ask questions.

 Detective Mahaffey conducted a "wants and warrants check" on his in-car computer. Salinas
had a single misdemeanor warrant outstanding from the Tarrant County sheriff's office, which was
confirmed by the police information center. The officer placed Salinas under arrest for the
outstanding warrant. As he conducted a search incident to arrest, he noticed that Salinas's shoes
were untied, loose, and "somewhat askew." He explained that an untied shoe is an officer safety
issue because a defendant might put weapons, narcotics, contraband, or other evidence in his shoe. 
Therefore, the officer removed Salinas's shoes as part of the search incident to arrest. He found a
baggy of marijuana which is the subject of this possession case. 

 Detective Mahaffey was the only witness who testified at the hearing on the motion to
suppress. After the hearing, the trial court granted the motion and stated in the order that the
evidence was a "result of the illegal stop, search, and seizure." The court did not make oral or
written findings of fact or give any indication of the basis for its ruling. The State appealed the trial
court's ruling.

Standard of Review

 In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. State v. Ross, 32 S.W.3d 853,
855 (Tex. Crim. App. 2000). Accordingly, the judge may believe or disbelieve all or any part of a
witness's testimony, even if that testimony is not controverted. Id. When the trial court fails to file
findings of fact, we view the evidence in the light most favorable to the trial court's ruling and
assume that the trial court made implicit findings of fact that support its ruling as long as those
findings are supported by the record. Id. 

 In a motion to suppress hearing where the only evidence presented is the testimony of the
arresting officer which, if believed, adds up to reasonable suspicion or probable cause, and the trial
court grants the motion without any explanation, there is not necessarily a concrete set of facts that
can be implied from such a ruling. Id. at 856. In this situation, the determination of reasonable
suspicion or probable cause rests entirely on the credibility of the lone witness. Id. An appellate
court should give almost total deference to a trial court's rulings on "application of law to fact
questions," also known as "mixed questions of law and fact," if the resolution of those ultimate
questions turns on an evaluation of credibility and demeanor. Id. If the trial court's decision is
correct on any theory of law applicable to the case, the decision will be sustained. Id.


Initial Contact 

 In its first issue, the State contends the trial court erred in granting Salinas's motion to
suppress because his arrest arose from a consensual police-citizen encounter that did not implicate
the Fourth Amendment. It argues that law enforcement officers may stop citizens and pose
questions, ask for identification, and even request consent to search.

 In its second issue, the State asserts the trial court erred in granting Salinas's motion to
suppress because the initial police contact was a proper Terry investigation as described in Terry v.
Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Based on information from a credible,
known source, the State argues, Detective Mahaffey had reasonable suspicion to believe that Salinas
was engaged in illegal activity.

Applicable Law

 A police officer is just as free as any other citizen to stop and ask questions of a fellow
citizen. Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). Such encounters are
consensual as long as a reasonable person would feel free to decline the officer's requests or
otherwise terminate the encounter. State v. Velasquez, 994 S.W.2d 676, 679 (Tex. Crim. App.
1999). Further, a state official may detain a person briefly for investigation without a warrant if the
official can point to specific and articulable facts, together with reasonable inferences from those
facts, that reasonably suggest the person detained has been or soon will be involved in criminal
activity. Terry, 392 U.S. at 21-22, 88 S. Ct. at 1880. Information from an informant that exhibits
sufficient indicia of reliability may provide the reasonable suspicion necessary to justify an
investigatory detention. Alabama v. White, 496 U.S. 325, 329-30, 110 S. Ct. 2412, 2415-16, 110
L. Ed. 2d 301 (1990). Where a named informant is a private citizen whose only contact with the
police results from having witnessed a criminal act committed by another, the credibility and
reliability of the information is inherent. Esco v. State, 668 S.W.2d 358, 360-61 (Tex. Crim. App.
1982).

Discussion

 Here, Detective Mahaffey testified that he treated the initial contact as a consensual encounter
although he did not feel the young men were free to walk on and ignore him. He also testified that
the young men were free not to give him their identification. Additionally, he said he had the details
necessary to make contact and he had probable cause to detain them, but not probable cause to arrest
them. He initiated the investigation because he had specific information from a named citizen who
lived in the area where she witnessed the destruction of private property by a group of young men. 
Within five minutes of being notified by Ms. Bloom, the officer was able to locate a group of young
men, matching the description given by Ms. Bloom, about one hundred yards away from the location
where she saw them standing. Thus, Detective Mahaffey corroborated the information supplied by
Ms. Bloom. Accordingly, Detective Mahaffey's testimony, if believed, is sufficient to show
reasonable suspicion to believe Salinas was engaged in illegal activity thereby justifying the
investigatory detention. See Terry, 392 U.S. at 21-22, 88 S. Ct. at 1880. Additionally, if Detective
Mahaffey is believed, he neither did nor said anything to make Salinas believe he was not entitled
to terminate the encounter and walk away. See Velasquez, 994 S.W.2d at 679. Therefore, if
Detective Mahaffey's testimony is believed, his initial contact with Salinas was proper.

 We may not presume error when there is a viable legal theory that supports the trial court's
ruling. Ross, 32 S.W.3d at 858. The only theory that supports the trial court's ruling is that the court
did not believe the officer's testimony. We must therefore defer to the district court's ruling, which
turned on an evaluation of the credibility of the sole witness. See id. at 856. The trial court was
within its discretion to disbelieve Detective Mahaffey and determine that the detention violated the
Fourth Amendment. We overrule the State's first and second issues.


Conclusion

 Given the absence of any factual findings, the presumption of regularity of a trial court's
judgment, and application of the "almost total deference standard," we conclude the trial court was
within its discretion in disbelieving the officer's testimony and granting the motion to suppress. We
need not consider the State's remaining issues. See Tex. R. App. P. 47.1.

 We affirm the trial court's order.

 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered February 18, 2004.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.











(DO NOT PUBLISH)